```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION
```

MMB Development Group, Ltd.     §
                                §
                Plaintiff,      §
VS.                             §    CIVIL ACTION NO. H-08-3731
                                §
Westernbank Puerto Rico,        §
                                §
                Defendant.      §

## Memorandum Opinion and Order

Pending before the court is defendant Westernbank Puerto Rico's ("Westernbank") Motion to Dismiss for (1) Lack of Personal Jurisdiction, (2) Improper Venue, and (3) Failure to Join an Indispensable Party (Docket Entry No. 11). Alternatively, Defendant seeks transfer of this action to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, Defendant's Motion to Dismiss will be denied, but its Motion to Transfer will be granted.

### I. Factual and Procedural Background

Plaintiff is a Texas-based real estate developer and defendant Westernbank is a commercial bank chartered under the laws of Puerto Rico.[1] Plaintiff's First Amended Complaint alleges that in 2005 MMB and Centro Medico del Turabo, Inc. ("CMT"), a hospital, created a partnership, HIMA Development, S.P. ("HIMA S.P."), in order to develop land adjacent to the hospital. HIMA S.P. turned

---

[1] Plaintiff's First Amended Complaint, Docket Entry No. 8, p. 2.

to defendant Westernbank to obtain financing for the project. Plaintiff alleges that HIMA S.P. anticipated that a medical office building would be built on the property and would be purchased by CMT and other unnamed physicians and businesses.  MMB, a development company, did not plan on purchasing any portion of the development.[2]

HIMA S.P. and Westernbank negotiated a line of credit for the project.  Plaintiff alleges that during the negotiation of the line of credit, Westernbank agreed to provide financing to potential buyers.  HIMA S.P. continued developing the property.  When the project was nearing completion, MMB entered into a transaction with HIMA-San Pablo Properties, Inc. ("HIMA San Pablo"), a subsidiary of CMT to sell MMB's interest in HIMA S.P. to HIMA San Pablo.  In return for MMB's interest, HIMA San Pablo executed two promissory notes in favor of MMB secured by a partnership interest in HIMA S.P.[3]

HIMA San Pablo, CMT, and Westernbank then began working together to secure financing from Westernbank so that HIMA San Pablo could begin making payments due under the promissory notes. At some point during these negotiations, Westernbank allegedly informed CMT that it would require additional payment in order to extend the applicable financing provisions.  MMB alleges that a

---

[2] Id. at 3.

[3] Id. at 4-5.

Westernbank representative stated that the extension would allow Westernbank to close the loans necessary for HIMA San Pablo to meet its obligations to MMB.  MMB payed an extension fee, but Westernbank ultimately failed to provide financing to CMT and HIMA San Pablo.[4]

In an attempt to save the deal, the parties worked out a restructured transaction.  The new transaction required HIMA S.P. to transfer all of its assets to a new subsidiary of CMT, CMT Properties.  It also provided for a restructuring of the payments owed to MMB.  However, according to MMB, when HIMA S.P. transferred its assets to CMT Properties, MMB's security interest became essentially worthless.  MMB also alleges that Westernbank benefitted from the transfer because the security interest it retained in CMT pursuant to the original line of credit increased in value when MMB's interest in the medical office building was removed.  Although the parties continued discussions, Westernbank never provided the contemplated financing.[5]

MMB also alleges that Westernbank concealed the fact that it was being investigated by regulators and that regulators had directed Westernbank to reduce its outstanding loans to CMT. According to MMB, the action by regulators indicated that

---

[4] Id. at 5-7.

[5] Id. at 8-10.

Westernbank never intended to follow through on the loans when it accepted the extension payment from MMB.[6]

MMB filed this action on December 24, 2008, to recover damages caused by Westernbank's alleged misrepresentations.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff MMB Development, Ltd.'s ("MMB") First Amended Complaint asserts claims for fraud, negligent misrepresentation, promissory estoppel, breach of contract, tortious interference, and declaratory judgment, under the laws of Texas and Puerto Rico. Westernbank argues that all of these claims should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. MMB responds that Westernbank's contacts with Texas are sufficient to support the court's assertion of personal jurisdiction over it.

### A. Standard of Review

When a foreign defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by

---

[6]Id. at 9-11.

presenting a *prima facie* case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)).  "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. At 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts.  "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e C]ourt." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).  However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomoc Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001).

**B.   Analysis**

    1.   Applicable Law

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional

notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement</u>, 66 S. Ct. 154, 158 (1945) (quoting <u>Milliken v. Meyer</u>, 612 S. Ct. 339 343 (1940)).  Once a plaintiff satisfies these two requirements, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  <u>Burger King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2185 (1985).  Federal courts "sitting in diversity may assert personal jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution."  <u>Johnston v. Multidata Systems International Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008).

    2.   <u>Texas Long-Arm Statute</u>

Texas courts may assert personal jurisdiction "over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees."  <u>See</u> <u>Moki Mac River Expeditions v. Drugg</u>, 221 S.W.3d 569, 574 (Tex. 2007) (citing <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 356 (Tex. 1990)).  The Texas long-arm statute authorizes service of process on nonresidents "[i]n an action arising from the

nonresident's business in this state." Tex. Civ. Prac. & Rem. Code § 17.043.

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; [or]
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

<u>Id.</u> at § 17.042.  The Texas Supreme Court has stated that the long-arm statute's "broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'" <u>Moki Mac</u>, 221 S.W.3d at 575 (quoting <u>Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.</u>, 815 S.W.2d 223, 226 (Tex. 1991)).  <u>See also</u> <u>Schlobohm</u>, 784 S.W.3d at 357 (holding that the limits of the Texas long-arm statute are coextensive with the limits of constitutional due process guarantees).

    3.   <u>Minimum Contacts Analysis</u>

"There are two types of 'minimum contacts:' those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." <u>Lewis v. Fresne</u>, 252 F.3d 352, 358 (5th Cir. 2001).  Westernbank argues that this action should be

7

dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction because it "is from Puerto Rico and does not have sufficient contacts with Texas to provide this Court with jurisdiction over it."[7]  Plaintiff responds that Westernbank's fraudulent communications directed towards MMB in Texas are sufficient so support specific personal jurisdiction over Westernbank in this court.[8]  MMB does not argue that this court has general jurisdiction over Westernbank.

A court may exercise specific jurisdiction over a nonresident defendant if the lawsuit arises from or relates to the defendant's contact with the forum state.  <u>Icee Distributors Inc. v. J & J Snack Foods Corp.</u>, 325 F.3d 586, 591 (5th Cir. 2003).  Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  <u>Burger King</u>, 105 S. Ct. at 2185.  The Texas Supreme Court has recently explained that there are three parts to a purposeful availment inquiry.  First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person.  Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated.  Finally, the defendant must seek some benefit, advantage, or profit by availing itself of

---

[7]Defendant's Motion to Dismiss, Docket Entry No. 11, p. 6.

[8]Plaintiff's Response, Docket Entry No. 20, p. 10.

the jurisdiction.  In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there.  Moki Mac, 221 S.W.3d at 575 (citing Burger King, 105 S. Ct. At 2182).  "[I]f a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim."  Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 2745 (5th Cir. 2006).  In this case, however, the actions giving rise to all of the claims overlap and are intertwined.  Accordingly, specific jurisdiction for each claim need not be addressed separately.

In support of asserting jurisdiction over Westernbank, Plaintiff cites at least 14 allegedly fraudulent communications directed towards it in Texas.[9]  The Fifth Circuit has recently considered a case in which fraudulent communications directed toward the forum state were sufficient to establish minimum contacts.  See Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 244-45 (5th Cir. 2008).  Although the construction project that began the relationship between MMB and Westernbank was located in Puerto Rico, it is the fraudulent communications that provide the basis for the claims in this case.  Many of those communications were directed towards Texas, and the

---

[9] Id. at 11-13.

negative effects of those communications were felt in Texas. Accordingly, MMB has established that Westernbank has minimum contacts sufficient to establish specific personal jurisdiction over Westernbank.

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair." Id. (quoting Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). The assertion of jurisdiction in this case is fair. "Where a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities giving rise to personal jurisdiction, the exercise of that jurisdiction will be considered fair." Id.

Because this court has jurisdiction over Westernbank, the motion to dismiss for lack of personal jurisdiction will be denied.

### III.  **Motion to Transfer**

Westernbank argues alternatively that this action should be transferred to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. §1404(a).

1. Standard of Review

Section 1404(a) allows district courts to transfer an action to another proper venue "for the convenience of parties and witnesses" if such a transfer will be "in the interest of justice." 28 U.S.C. §1404(a). A party seeking transfer must show good cause for transfer. In re Volkswagen of America, Inc., 545 F.3d 304, 315

10

(5th Cir. 2008).  A movant meets the burden by showing that the "transferee venue is clearly more convenient."  Id.

    2.  Threshold Inquiry

Under § 1404(a) the court must first determine whether this action might have been brought in the district to which the defendants seek a transfer.  In re Volkswagen of America, Inc., 545 F.3d 304, 312 (5th Cir. 2008); In re Horseshoe Entertainment, 337 F.3d 419, 433 (5th Cir. 2003).  A diversity action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State."  28 U.S.C. § 1391(a)(1).  Since Westernbank resides in Puerto Rico, this action could have been brought in the District of Puerto Rico.

    3.  The Interest of Justice

The Fifth Circuit has explained that the "interest of justice" inquiry involves considering four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law."  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).  These factors favor transferring the case to Puerto Rico.

With regard to the first factor, MMB notes that the average time between filing and trial in the District of Puerto Rico is 32

11

months, while there are only eight months before the current trial setting in this case. While this does indicate that there may be some delay in reaching trial if this case is transferred, the delay is not so overwhelming as to be burdensome. Moreover, there is no indication that the Puerto Rican court is so over-burdened that a transfer of this case will prevent efficient administration of this and other cases. Nor is it certain when the case would actually be reached for trial in this district. The Docket Control Order merely sets a docket call for April 9, 2010. It does not set an actual trial date. The court's docket control orders are often extended, either by agreement of the parties or by the court. Overall, this factor is neutral in the transfer analysis.

The second factor weighs heavily in favor of transfer. This case involves a real estate and financing deal as part of a project to be built in Puerto Rico. The defendant is a Puerto Rican company, and the Plaintiff, though residing in the Southern District of Texas, conducts business and makes investments in Puerto Rico. The connection between this case and the Southern District of Texas is much weaker than its connection with Puerto Rico.

The third factor also weighs in favor of transfer since Puerto Rican law will likely govern this dispute. While this court is capable of applying Puerto Rican law, there is little question that

12

a court sitting in Puerto Rico has greater familiarity with Puerto Rican law.

With regard to the fourth and final factor, neither party has identified any conflict of law concerns. Therefore, this factor is neutral. Because two factors favor transfer and two are neutral, "the interest of justice" favors transferring this case to the District of Puerto Rico. 28 U.S.C. § 1404(a).

4. The Convenience of the Parties

Courts should evaluate the convenience of the parties and witnesses based on certain types of private interest factors. These factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG, 371 F.3d at 203. Courts also consider the plaintiff's choice of forum, the place of the alleged wrong, and the possibility of delay or prejudice if transfer is granted. See In re Horseshoe Entertainment, 337 F.3d at 433.

The first factor is neutral in this analysis since most of the proof in this case will be documentary or elicited through live testimony. These sources can be accessed easily in either forum, and there is no evidence that this case is so document intensive that transportation of relevant documents would be burdensome.

13

The second factor weighs in favor of transfer. Defendant has identified two key witnesses it alleges were involved in the negotiations between MMB and Westernbank and are beyond the subpoena power of this court. Quino Rodriguez and Juan Carlos Pavia were involved in the allegedly fraudulently negotiations and are not party employees. Since both of them live in Puerto Rico, their live testimony cannot be assured unless trial takes place there. MMB has not identified any key witnesses whose testimony cannot be compelled in Puerto Rico.[10]

The third factor also weighs in favor of transfer. Westernbank has identified four Puerto Rican witnesses who would need to travel to Texas to testify. MMB has identified one witness in its Amended Complaint, Mr. Berry, who would have to travel to Puerto Rico to testify.[11] Since more witnesses would have to travel to Texas than to Puerto Rico, the cost of trial would be substantially lower in Puerto Rico.

The court's consideration of "all practical problems that make trial of a case easy, expeditious and inexpensive" leads to a conclusion that this factor is neutral. There are no compelling problems, other than those already discussed, that would favor moving forward in one forum over the other.

---

[10] Defendant's Reply, Docket Entry No. 21, p. 18.

[11] Id.

14

MMB argues that trial will be delayed if this case is transferred. However, the possibility of delay is only relevant in "rare and special circumstances." In re Horseshoe Entertainment, 337 F.3d at 434. It must be established by clear and convincing evidence. Id. Since there is no evidence of substantial delay, this factor is neutral in this case.

The plaintiff's choice of forum favors venue remaining in the Southern District of Texas. Under Fifth Circuit precedent, however, this factor is "neither conclusive nor determinative." In re Horseshoe Entertainment, 337 F.3d at 434. The other factors, which heavily militate toward transferring the case, outweigh the fact that Houston was the plaintiff's choice of forum.

After weighing the relevant factors, the court concludes that the "convenience of the parties" analysis supports transfer. Because all of the requirements of §1404(a) are satisfied, the court will order the case to be transferred to the District of Puerto Rico.

**IV.   Motion to Dismiss for Failure to Join an Indispensable Party**

Westernbank argues that the case should be dismissed because it cannot proceed without the presence of HIMA S.P. Since HIMA S.P. is a Puerto Rican entity, it can more easily be brought before a Puerto Rican court if necessary. Accordingly, the court determines that this motion is best left to the discretion of the transferee court.

15

## VI. Conclusion and Order

Based on the foregoing analysis, defendant Westernbank's Motion to Dismiss (Docket Entry No. 11) is **DENIED**, but its Motion to Transfer (Docket Entry No. 11) is **GRANTED**. This action is **TRANSFERRED** to the United States District Court for the District of Puerto Rico.

**SIGNED** at Houston, Texas, on this 3rd day of August, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE